IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| Storage Cap Leasing, LLC, a Nevada limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> LBM, Inc., a North Carolina corporation, and Stadium Drive, LLC, a North Carolina limited liability company, <br><br> Defendants. | Case No. _____ |

**COMPLAINT FOR SPECIFIC PERFORMANCE AND DAMAGES**

Plaintiff Storage Cap Leasing, LLC ("Plaintiff") sues Defendants LBM, Inc. ("LBM") and Stadium Drive, LLC ("Stadium Drive") (collectively, "Defendants") for specific performance of a contract for the purchase of real estate and related ownership interests, and damages, and alleges the following:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is a Nevada limited liability company. Plaintiff's members are citizens of Florida and Nevada.

2. LBM is a North Carolina corporation with its principal place of business in Harnett County, North Carolina.

3. Stadium Drive is a North Carolina limited liability company. Upon information and belief and based on information reasonably available to Plaintiff, Stadium Drive's members are citizens of North Carolina.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees, and is between citizens of different states.

5. Venue is proper in the United States District Court for the Middle District of Georgia under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

6. Plaintiff owns and operates commercial and residential storage and warehousing businesses nationwide.

7. Defendants are owners and operators of several short-term and long-term self-storage businesses in Columbus, Georgia, and Phenix City, Alabama.

8. As set forth in more detail below, Plaintiff and Defendants entered into a valid and enforceable contract for the purchase and sale of Defendants' ownership interests in those self-storage businesses and associated real property.

9. Although Plaintiff met its obligations under that contract, Defendants breached by unreasonably refusing Plaintiff's reasonable requests to conduct necessary due diligence during the parties' agreed inspection period. Defendants further breached their agreement not to market those businesses for sale to anyone else while under an exclusive contract with Plaintiff.

10. Plaintiff brings this action to enforce its rights to specific performance of the transactions contemplated in the parties' contract and for damages.

11. All conditions precedent to the commencement of this action, if any, have been satisfied, discharged, or waived.

12. Plaintiff has retained Holland & Knight LLP to represent it in this action and has agreed to pay its counsel reasonable attorneys' fees. Plaintiff is entitled to recover those fees from Defendants pursuant to Article 11.12 of the Agreement, as defined below.

### The Parties Sign a Letter of Intent

13. On or about June 8, 2022, Plaintiff and Defendants, through their ultimate owner, entered into a Letter of Intent to Purchase ("LOI") for the acquisition of certain real property and related ownership interests.

14. Paragraph 10 of the LOI contains a "no-shop" provision that obligates Defendants not to shop or market the Companies to anyone but Plaintiff through the closing date.

15. The No-Shop Provision of the LOI is binding on the Plaintiff and Defendants.

### The Parties Sign a Purchase Agreement

16. On July 29, 2022, Plaintiff and Defendants entered into an Equity Interest Purchase Agreement (the "Agreement") for the sale of Ownership Interests and Real Property in several companies owned by Defendants:[1] Columbus Crystal Valley, LLC, a North Carolina limited liability company; Stadium Storage, LLC, a North Carolina limited liability company; Stadium Carwash, LLC, a North Carolina limited liability company; and Uptown Storage, LLC, a North Carolina limited liability company (collectively, the "Companies").

17. Pursuant to the Agreement, at Closing, Plaintiff agreed to pay a total purchase price as reflected in the Agreement for Ownership Interests in the Companies and associated Real Property, to be disbursed according to the terms of the Agreement.

---

[1] Unless otherwise defined in this Complaint, capitalized terms have the meanings given to them in the Agreement. Because of confidentiality provisions in the LOI and Agreement, those agreements are not being filed at this time.

**Defendants Fail to Cooperate with Due Diligence as Required Under the Agreement**

18. The Agreement provides Plaintiff with a 40-day due diligence and inspection period.

19. Defendants are obligated under Article 4.3 of the Agreement to cooperate with Plaintiff during the due diligence period.

20. During due diligence, the Agreement entitles Plaintiff to reasonable access to the Real Properties to conduct inspections, financial audits, non-invasive tests, studies, and related due diligence.

21. The Agreement also entitles Plaintiff to request Defendants' consent to conduct additional due diligence, including physically intrusive testing of the Real Properties.

22. Specifically, Article 4.2.1 of the Agreement sets forth Plaintiff's due diligence rights to information and access to the Real Properties.

23. After entering into the Agreement, Plaintiff contracted with ECS Southeast, LLP ("ECS"), to perform limited, non-invasive Phase I environmental testing at the Real Properties. On August 12, 2022, after performing these Phase I environmental tests, ECS recommended that additional testing should be performed at two properties: Pembroke Self Storage located at 841 Pembroke Drive, Columbus, Georgia (the "Pembroke Property"); and Uptown Mini-Storage located at 1331 10th Avenue, Columbus, Georgia (the "Uptown Property").

24. On August 23, 2022, Plaintiff submitted a written request for Defendants' consent, pursuant to Article 4.2.1 of the Agreement, to begin and complete Phase II environmental assessment surveys at the Pembroke Property and the Uptown Property.

25. With its written request, Plaintiff submitted to Defendants written proposals and scopes of work from ECS for this environmental testing. On account of the scope of services to

be performed and the necessity of undertaking this work, Plaintiff at the same time requested Defendants' consent to extend the Inspection Period by 45 days. As noted in the written proposals, ECS expected to deliver results of the assessments within approximately four to six weeks after work would begin. A true and correct copy of Plaintiff's request is attached as **Exhibit A**.

26. Plaintiff made its request consistent with the terms of Article 4.2.1, by seeking Defendants' written consent during the then-ongoing Inspection Period.

27. Plaintiff's request was commercially reasonable and ordinary in the course of expected due diligence for a transaction of this type.

28. The Agreement obligates Defendants not to unreasonably withhold, condition, or delay approval of Plaintiff's request to complete Phase II environmental assessment surveys.

29. Notwithstanding Plaintiff's reasonable request and the need to conduct Phase II environmental assessments so that Plaintiff could avail itself of its diligence and potential ownership rights, Defendants refused, without explanation, to consent either to the assessments or an extension of the Inspection Period.

30. Further, although Article 4.2.1 obligates Defendants to provide a written Refusal Notice, Defendants failed to do so.

31. Plaintiff was then forced to terminate the Agreement pursuant to Article 4.4, which it did by e-mail dated September 7, 2022, at 10:16 a.m. A true and correct copy of the termination notice is attached as **Exhibit B**.

**Defendants Market the Companies In Violation
of the Exclusivity Term in the LOI and Agreement**

32. The Agreement, like the LOI, contains a "no shop" provision, providing Plaintiff a period of exclusivity to negotiate, inspect, and close on its contemplated acquisition of the Companies.

33. Article 12 of the Agreement obligates Defendants not to shop or market the Companies while under contract with Plaintiff.

34. On September 2, 2022, during the active Inspection Period before Plaintiff sent its termination notice, Plaintiff received an unsolicited e-mail from a real estate broker regarding a "portfolio of Storage properties across the southeast, GA." As reflected in that e-mail, the broker asked if Plaintiff would be interested in additional information on the opportunity to acquire that portfolio. A true and correct copy of the communication is attached as **Exhibit C**.

35. On September 7, 2022, at 1:45 p.m., Plaintiff received a second e-mail from the same broker which identified the portfolio as consisting of "6+ properties located in Phenix City, AL and Columbus, GA." A true and correct copy of the communication is attached as **Exhibit D**.

36. The properties referenced in these two e-mails are the same Real Properties that are subject to the Agreement.

37. Upon information and belief, Defendants or their agents communicated orally or in writing with a real estate broker to market the Real Properties while Defendants were under contract with Plaintiff.

38. Defendants' effort to market and/or sell Defendants' Ownership Interests in the Companies and Real Properties before Closing or termination of the Agreement is a breach of Paragraph 10 of the LOI.

39. Defendants' effort to market and/or sell Defendants' Ownership Interests in the Companies and Real Properties before Closing or termination of the Agreement is a breach of Article 12 of the Agreement.

40. At the time Plaintiff terminated the Agreement on September 7, 2022, at 10:16 a.m. as a result of Defendants' refusal to permit necessary environmental assessments, Plaintiff was unaware that Defendants were in breach of Article 12.

41. Based on the timeline of events, Defendants knew before Plaintiff's termination that Defendants were in breach of Article 12.

42. Had Plaintiff known of Defendants' breach of Article 12, Plaintiff would have demanded Defendants' compliance with the terms of the Agreement and Plaintiff's remedies set forth therein.

43. Instead, Defendants precipitated and then accepted Plaintiff's termination, without disclosing to Plaintiff that Defendants had begun marketing the Real Properties in breach of Article 12.

44. Plaintiff is entitled to enforce specific performance of Defendants' obligations to consummate transfer of the Ownership Interests of the Companies as contemplated in the Agreement, including Plaintiff's right to complete necessary inspections and conduct required environmental testing.

45. If specific performance is not available because of an act or omission by Defendants, Plaintiff is entitled to recover money damages caused by Defendants' breaches of the Agreement.

### COUNT I - SPECIFIC PERFORMANCE OF THE AGREEMENT

46. Plaintiff incorporates and re-alleges Paragraphs 1 through 45 above as if fully set forth herein.

47. The Agreement constitutes a valid and binding contract between Plaintiff and Defendants.

48. The terms of the Agreement are clear, distinct, and definite.

49. Defendants have materially breached the Agreement by, among other breaches, failing to permit Plaintiff's inspection requests, failing to provide a written Refusal Notice, failing to extend the Inspection Period, and marketing the Real Properties prior to the termination of the Agreement.

50. Plaintiff has complied with all conditions precedent entitling it to enforce specific performance of the Agreement.

51. There is a mutuality between the performance of the parties' obligations.

52. Plaintiff does not have an adequate remedy at law. The available monetary remedies are inadequate due to the unique nature of the properties subject to the Agreement.

53. The equitable remedy requested is feasible because Defendants can be ordered to meet their obligations under the Agreement.

54. Plaintiff has committed no wrongdoing itself that would equitably prevent an order of specific performance.

WHEREFORE, Plaintiff requests this Court to enter judgment against Defendants requiring Defendants to specifically perform in accordance with the terms of the Agreement including, but not limited to, allowing Plaintiff the right to complete necessary inspections, conduct required environmental testing, and consummate the purchase and sale transaction.

### COUNT II - BREACH OF CONTRACT (the Pembroke Property)

55. Plaintiff incorporates and re-alleges Paragraphs 1 through 45 above as if fully set forth herein.

56. Plaintiff and Defendants entered into the Agreement on July 29, 2022.

57. The Agreement constitutes a valid and binding contract between Plaintiff and Defendants.

58. Pursuant to Article 4.1.2 of the Agreement, Plaintiff was entitled to a reasonable inspection of the Pembroke Property.

59. Defendants breached the Agreement by unreasonably withholding consent in response to Plaintiff's reasonable request to inspect the Pembroke Property, failing to provide a written Refusal Notice, and failing to extend the Inspection Period by a reasonable period of time.

60. As a direct and proximate result of Defendants' breaches of the Agreement, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, interest, costs, its attorneys' fees incurred in bringing this action, and any such other relief which this Court may deem just and proper.

## COUNT III - BREACH OF CONTRACT (the Uptown Property)

61. Plaintiff incorporates and re-alleges Paragraphs 1 through 45 above as if fully set forth herein.

62. Plaintiff and Defendants entered into the Agreement on July 29, 2022.

63. The Agreement constitutes a valid and binding contract between Plaintiff and Defendants.

64. Pursuant to Article 4.1.2 of the Agreement, Plaintiff was entitled to a reasonable inspection of the Uptown Property.

65. Defendants breached the Agreement by unreasonably withholding consent in response to Plaintiff's reasonable request to inspect the Uptown Property, failing to provide a written Refusal Notice, and failing to extend the Inspection Period by a reasonable period of time.

66. As a direct and proximate result of Defendants' breaches of the Agreement, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, interest, costs, its attorneys' fees incurred in bringing this action, and any such other relief which this Court may deem just and proper.

### COUNT IV - BREACH OF CONTRACT (Article 12 of the Agreement)

67. Plaintiff incorporates and re-alleges Paragraphs 1 through 45 above as if fully set forth herein.

68. Plaintiff and Defendants entered into the Agreement on July 29, 2022.

69. The Agreement constitutes a valid and binding contract between Plaintiff and Defendants.

70. Pursuant to Article 12 of the Agreement, Defendants were prohibited from marketing the Ownership Interests or Real Properties that were contemplated in the Agreement until the earlier of the Closing or termination of the Agreement.

71. Defendants breached the Agreement by marketing the Real Properties prior to the termination of the Agreement.

72. As a direct and proximate result of Defendants' breaches of the Agreement, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, interest, costs, its attorneys' fees incurred in bringing this action, and any such other relief which this Court may deem just and proper.

## COUNT V - BREACH OF CONTRACT (LOI)

73. Plaintiff incorporates and re-alleges Paragraphs 1 through 45 above as if fully set forth herein.

74. Plaintiff and Defendants entered into the LOI on June 8, 2022.

75. Paragraph 10 of the LOI constitutes a valid and enforceable contract between the parties.

76. Pursuant to Paragraph 10 of the LOI, Defendants were obligated not to market or sell the subject Real Properties to anyone other than Plaintiff.

77. Defendants breached the LOI by marketing the Real Properties prior to the closing.

78. As a direct and proximate result of Defendants' breaches of the LOI, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, interest, costs, its attorneys' fees incurred in bringing this action, and any such other relief which this Court may deem just and proper.

## COUNT VI- BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

79. Plaintiff incorporates and re-alleges Paragraphs 1 through 45 above as if fully set forth herein.

80. An implied covenant of good faith and fair dealing exists in every contract.

81. Plaintiff and Defendants entered into the Agreement on July 29, 2022.

82. The Agreement constitutes a valid and binding contract between Plaintiff and Defendants.

83. Plaintiff performed under the Agreement by providing a reasonable, written request to conduct Phase II environmental inspections at the Pembroke Property and Uptown Property.

84. Defendants unfairly deprived Plaintiff of the benefits of the Agreement by unreasonably withholding consent to Plaintiff's request.

85. Defendants further unfairly deprived Plaintiff of the benefits of the Agreement by failing to provide a written Refusal Notice, as required by the Agreement.

86. Defendants further unfairly deprived Plaintiff of the benefits of the Agreement by failing to extend the Inspection Period as requested by Plaintiff.

87. As a direct and proximate result of Defendants' breaches of the implied covenant of good faith and fair dealing, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, interest, costs, its attorneys' fees incurred in bringing this action, and any such other relief which this Court may deem just and proper.

Dated: December 19, 2022

Respectfully Submitted,

HOLLAND & KNIGHT LLP

*/s/ Philip J. George*
Philip J. George
Georgia Bar No. 441996
E-Mail: philip.george@hklaw.com
1180 West Peachtree Street
Regions Plaza, Suite 1800
Atlanta, Georgia  30309
Telephone:  404.817.8500
Fax:  404.881.0470

Paul McDermott (pro hac vice motion forthcoming)
Florida Bar No. 855901
E-mail:paul.mcdermott@hklaw.com

12

Michael Wyse (pro hac vice motion forthcoming)
Florida Bar No. 1032243
E-mail: michael.wyse@hklaw.com
100 North Tampa Street, Suite 4100
Tampa, FL  33602
Telephone:  813.227.8500
Fax:  813.229.0134

Attorneys for Storage Cap Leasing, LLC